# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JUSTIN WALKUP, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 12-1107-CV-W-GAF-P |
| LARRY DENNEY, | ) ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Justin Walkup, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 21, 2012, seeking to challenge his 2008 convictions and sentences for second degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

The petition raises four grounds for relief: (1) that the trial court erred in overruling petitioner's objection and allowing Dr. Dudley to testify about the autopsy; (2) that the appellate court erred in denying petitioner's Rule 29.15 motion; (3) the e-filing system at Crossroads Correctional Center is unconstitutional; and (4) the motion court failed to rule on certain pro se claims which, petitioner asserts, constitute cause for procedural default of those claims. Respondent contends that grounds 1 and 2 are without merit, ground 3 is not cognizable under Section 2254, and ground 4 is procedurally defaulted.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> [O]n January 21, 2003, [petitioner] killed his girlfriend, Deborah Lilly, by stabbing her. After the stabbing, [petitioner] took Lilly's money, jewelry, and cell phone and left in her car. As he was

driving around, he used Lilly's cell phone to call a friend. He told the friend that he had killed Lilly by beating, choking, and stabbing her. Eventually, he ran the car off the road and crashed into a fence at the home of Leslie Slover and Greg Smith. Slover saw [petitioner] take something out of his car and throw it behind a shed on their property. [Petitioner] told Slover and Smith that he had killed his girlfriend. When the police arrived to investigate the car crash, [petitioner] screamed to the police, "I killed my girlfriend. I committed murder. I killed my girlfriend." After he was taken into custody, [petitioner] again admitted to the police orally, and in writing, that he had killed Lilly. The police later recovered two knives, with Lilly's blood on them, from Slover and Smith's property.

[Petitioner] was charged with first-degree murder and armed criminal action. He was tried and convicted of these offenses in 2004, and sentenced to concurrent terms of life imprisonment without parole for the murder charge and life imprisonment for the armed criminal action charge. The Missouri Supreme Court reversed his convictions and sentences on direct appeal, finding that the circuit court erred in excluding evidence that [petitioner] suffered from a mental disease or defect that would have negated the element of deliberation. ***State v. Walkup*, 220 S.W.3d 748, 758 (Mo. banc 2007).**

[Petitioner] was retried in March 2008. At the time of the second trial, Dr. Thomas Gill, who had performed the autopsy on Lilly's body in 2003 and had testified during the first trial, was no longer employed as the chief medical examiner for Jackson County. Dr. Mary Dudley was his successor.

Before trial, [petitioner] filed a motion to preclude Dudley from testifying in place of Gill. [Petitioner] asserted that Gill was available to the State, the State's use of Dudley's testimony based on Gill's autopsy report was inadmissible hearsay, and the admission of Dudley's testimony would violate his constitutional right to cross-examine and confront the witnesses against him.

The State filed a motion to permit Dudley to testify in place of Gill. In its motion, the State asserted that Gill's returning to Jackson County to testify would create a hardship to Gill's current practice. The State alleged that Dudley, as the current chief medical examiner, could use Gill's autopsy report and photographs in reaching her own independent opinion as to the cause and manner of Lilly's death. After hearing argument on the motions, the court

> sustained the State's motion and allowed Dudley to testify in Gill's place.
>
> Dudley testified that Gill performed the original autopsy on Lilly's body, and she relied on Gill's autopsy report and photographs, scene investigation reports prepared by death investigators, the toxicology report, and body diagrams to conduct an independent analysis. Dudley testified that the materials she relied upon to conduct her independent analysis are the type of materials relied upon by experts in the field of forensic pathology.
>
> As part of her analysis, Dudley prepared a wound chart showing each of the wounds on Lilly's body. According to Dudley, Lilly had both sharp and blunt-force injuries. She testified Lilly had a total of eleven sharp-force injuries, including both incised and stab wounds. Dudley numbered each stab wound on the chart and wrote the depth of the wound. Dudley also marked the blunt-force injuries, which included abrasions, contusions, and lacerations. She further noted on the chart the internal injuries caused by the stab wounds and blunt-force injuries.
>
> Based upon her independent examination of the available materials in the case, Dudley concluded that, while there was evidence Lilly had been choked, she did not die from strangulation. Rather, Dudley opined that the cause of Lilly's death was multiple blunt and sharp-force injuries and the manner of her death was homicide.
>
> The jury found [petitioner] guilty of the lesser-included offense of second-degree murder and armed criminal action. The court sentenced him, as a prior offender, to concurrent terms of life imprisonment for second-degree murder and 140 years imprisonment for armed criminal action.

(Respondent's Exhibit F, pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254

(e)(1).[1]  Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In Ground 1, petitioner contends that the trial court erred in overruling petitioner's objection and allowing Dr. Dudley to testify about the autopsy.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his sole point on appeal, [petitioner] contends the admission of Dudley's testimony and wound chart violated his rights under the Confrontation Clause. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him[.]"  In *Crawford v. Washington*, **541 U.S. 36, 68 (2004)**, the United States Supreme Court ruled that the Confrontation Clause requires the exclusion of all testimonial hearsay statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant.  ***March*, 216 S.W.3d at 665**.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

–4–

An autopsy report prepared for the purpose of a criminal prosecution is a testimonial statement. *State v. Bell*, **274 S.W.3d 592, 595 (Mo. App. 2009)**. "As such, an autopsy report, or testimony regarding an autopsy report, cannot be admitted without testimony from the person who conducted the autopsy or prepared the report unless the defendant has had an opportunity for cross-examination." *Id.* Hence, in *State v. Davidson*, **242 S.W.3d 409, 417 (Mo. App. 2007)**, the Eastern District of this court held that the admission of an autopsy report and testimony about the report from another medical examiner in lieu of the medical examiner who actually performed the autopsy and prepared the report violated the defendant's Confrontation Clause rights.

Likewise, this court recently ruled that it was error to allow one medical examiner to testify as to the opinions of another medical examiner that had performed the autopsy and prepared the report. *Bell*, **274 S.W.3d at 595**. n.1 In *Bell*, the current chief medical examiner testified to conclusions she reached based upon all of the evidence, including the former chief medical examiner's autopsy report. *Id.* **at 594**. Although the former medical examiner's autopsy report was not offered into evidence, the State asked the current medical examiner if her opinion "comport[ed]" with the former medical examiner's opinion. *Id.* After she replied that it did, the State asked her to testify to the former medical examiner's opinion, which she did. *Id.* We held that the admission of the current medical examiner's testimony, "*to the extent she discussed [the former medical examiner]'s opinions*, was error and violated [the defendant]'s Confrontation Clause rights." *Id.* **at 595** (emphasis added).

> n.1 The chief medical examiners in *Bell* were also Dudley and Gill.

Relying on *Davidson* and *Bell*, [petitioner] asserts that Dudley's testimony and wound chart were hearsay. [Petitioner] argues that Dudley obtained information regarding the number and size of the stab wounds from Gill's autopsy report and merely rewrote Gill's factual findings in a different format, which the State called Dudley's "own" wound chart. Because she did not testify that she measured the stab wounds or was present when the stab wounds were examined, [petitioner] contends that Dudley's testimony and wound chart constituted testimonial hearsay evidence of Gill's findings and opinions. We disagree.

Dudley testified that she prepared the wound chart "after looking

–5–

over the photographs and the autopsy report." She did not specify whether she obtained the number and measurements of the stab wounds from the autopsy photographs, which were admitted into evidence, or the autopsy report, which was not. Regardless, the number and measurements of the wounds were factual information, not Gill's opinions. Dudley did not mention a conclusion drawn by Gill or restate an opinion made by Gill, nor did the State attempt to introduce Gill's autopsy report. Rather, Dudley testified as a qualified expert to her own conclusions and opinions based upon her independent analysis of the factual information available to her. ***State v. Owsley*, 959 S.W.2d 789, 795 (Mo. banc 1997)**. Dudley was entitled to rely upon the factual information contained in the autopsy report and photographs, scene investigation reports, the toxicology report, and body diagrams as support for her opinions because she testified those materials are reasonably relied upon by other experts in the field of forensic pathology. ***State v. Brown*, 998 S.W.2d 531, 549 (Mo. banc 1999).**

Because neither Dudley's testimony nor wound chart contained Gill's testimonial hearsay statements, the Confrontation Clause was not triggered. ***State v. Haslett*, No. SD28572, 2009 WL 103992, at \*5 (Mo. App. S.D. Jan. 16, 2009)**. The circuit court did not err in admitting Dudley's testimony and wound chart.

Furthermore, even if we had found Dudley's testimony and wound chart to be inadmissible, [petitioner's] claim would still fail. Constitutional errors "do not require reversal if those errors are harmless beyond a reasonable doubt." ***Bell*, 274 S.W.3d at 595**. "To find an error harmless beyond a reasonable doubt, we must find that no reasonable doubt exists that the admitted evidence failed to contribute to the jury's verdict." ***Davidson*, 242 S.W.3d at 417**.

[Petitioner] contends that the admission of Dudley's testimony and wound chart was not harmless error because the State used the number and size of Lilly's wounds to argue that he acted deliberately and, therefore, committed first-degree murder instead of second-degree murder or voluntary manslaughter. While it is true that the State used this evidence to argue deliberation, the jury did not find that [petitioner] deliberated. The jury rejected the State's evidence of deliberation when it acquitted him of first-degree murder and instead convicted him of second-degree murder. Hence, [petitioner's] claim that he was prejudiced by the State's use of Dudley's testimony and wound chart to argue deliberation necessarily fails. The point on appeal is denied.

–6–

(Respondent's Exhibit E, pp. 5-8).

The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

Ground 1 is denied.

## GROUND 2

In Ground 2, petitioner asserts that the court plainly erred in denying his Rule 29.15 post-conviction motion. Petitioner raised only one ground in that motion, and on appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals disposed of it as follows:

> In his sole point on appeal, [petitioner] argues that trial counsel's submission of Instruction No. 8 -- a converse of the sudden passion element of the second-degree murder verdict director -- constituted ineffective assistance of counsel because the instruction misstated the law, directly contradicted verdict-directing Instruction No. 7, was confusing, and misled the jury, resulting in prejudice to [petitioner] insofar as he was convicted of second-degree murder, rather than voluntary manslaughter. The State argues that [petitioner's] claim does not merit relief because he failed to prove resulting prejudice from the submission of the instruction. We affirm.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

–7–

"To be entitled to post-conviction relief for an ineffective assistance of counsel claim, the movant must show that: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation; and (2) counsel's failure prejudiced the defense." *Borst v. State*, 337 S.W.3d 95, 101-02 (Mo. App. W.D. 2011) (citing *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009)). "Both the performance and prejudice prongs must be proved by a preponderance of the evidence." *Id.* at 102.

### A. MAI-CR 3d 308.02

A defendant "is entitled to the submission of an applicable converse instruction if requested." *State v. Washington*, 92 S.W.3d 205, 211 (Mo. App. W.D. 2002). MAI-CR 3d 308.02 provides the proper form for a converse instruction:

> [*Insert one of the following. Omit brackets and number. See Notes of Use 4 as to selection.*]
>
> [1] Unless you find and believe from the evidence beyond a reasonable doubt that
>
> [2] If you have a reasonable doubt as to whether
>
> [3] If you find and believe that
>
> [*Insert the elements to be covered in the converse instruction using the language from the verdict director; see Notes on Use for examples.*], you must find the defendant not guilty (under Count ____) of [*name of offense*] as submitted in Instruction No. _____.

MAI-CR 3d 308.02 (9-1-01). Notes on Use 4(B) indicates that

> the material that follows the introductory phrase must be taken from the verdict director. Care must be taken that the matter is framed in the affirmative or the negative as appropriate in the particular case.
> . . . .
> When the matter being conversed is stated in the verdict director in negative form, that is, requiring a finding that something did NOT occur, the converse will generally read better if option [2] "If you have a

reasonable doubt" or option [3] "If you find and believe" is used.

MAI-CR 3d 308.02, Notes on Use 4(B). The Notes on Use further indicate that "[u]sing option [1] 'Unless you find' produces a double negative" that can be "avoided by the use of either option [2] or [3]." *Id.*

### B. Instruction No. 7 and Instruction No. 8

In [petitioner's] trial, Instruction No. 7 (the State's verdict director) and Instruction No. 8 (Defendant's converse) were given to the jury.

**Instruction No. 7** -- the second-degree murder verdict director -- directed the jury:

> If you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about January 21, 2003, in the County of Jackson, State of Missouri, the defendant caused the death of Deborah Lilly by stabbing her, and
>>
>> Second, that defendant was aware that his conduct was practically certain to cause the death of Deborah Lilly,
>>
>> Third, that defendant did not do so under the influence of sudden passion arising from adequate cause,
>
> Then you will find the defendant guilty under Count I of murder in the second degree.

**Instruction No. 8** -- the converse submitted by [petitioner's] trial counsel -- advised the jury as follows:

> Unless you find and believe from the evidence beyond a reasonable doubt that the defendant did not act under the influence of sudden passion arising from adequate cause, you must find the defendant not guilty under Count I of murder in the second

–9–

degree as submitted in Instruction No. 7.

[Petitioner] claims that trial counsel's submission of Instruction No. 8 constituted ineffective assistance of counsel because it failed to follow the suggested form in Notes on Use 4(B), misstated the law, and resulted in a confusing and misleading instruction. He claims that the instruction, as given, "stated the opposite of paragraph three in Instruction 7, compelling the jury to disregard either the verdict director or the converse." We disagree.

### C. Compliance with MAI-CR 3d 308.02 and the accuracy of Instruction No. 8

While Instruction No. 8 was not the model of clarity, it was technically compliant with MAI, did not misstate the law, and did not conflict with Instruction No. 7.

The Notes on Use mandate that the material following the chosen introductory phrase (whichever it may be) "must be taken from the verdict director." Here, trial counsel chose introductory phrase [1] "Unless you find" despite the suggestion in the Notes on Use that either option [2] or [3] would result in a clearer instruction, avoiding possible confusion caused by the resulting double negative. n.5 Trial counsel was then obligated to insert the language from paragraph three of the verdict director, indicating that [petitioner] "did not [act] under the influence of sudden passion arising from adequate cause." This is exactly what trial counsel did. Thus, Instruction No. 8 complied with MAI.

> n.5 While it would certainly be better practice to choose an option resulting in a clearer instruction, nothing in the Notes on Use to MAI-CR 3d 308.02 precluded trial counsel's choice of option [1] "Unless you find."

In addition, the instruction, as written, did not conflict with the verdict director. Both instructions required the jury to find that [petitioner] did *not* act under the influence of sudden passion in order to find him *guilty* of second-degree murder, and both instructions advised the jury to find [petitioner] *not guilty* of second-degree murder if they found that [petitioner] *might* have acted under the influence of sudden passion. Instruction No. 8 directed the jury that "unless you find . . . that the defendant did not act under the influence of sudden passion . . . you must find the defendant not guilty . . . of murder in the second degree." Stated

Case 4:12-cv-01107-GAF   Document 15   Filed 01/10/13   Page 10 of 17

another way, converse Instruction No. 8 accurately states that "unless" the jury finds that the State met its burden to prove "beyond a reasonable doubt that the defendant did not act under the influence of sudden passion" (element three of the verdict-directing instruction), the jury "must find the defendant not guilty" of second-degree murder.

Even if we were to accept [petitioner's] reading of Instruction No. 8, it does not conflict with the verdict director. [Petitioner] suggests that the phrase "unless you find" is equivalent to the phrase "if you do not find." Using this substitute language, Instruction No. 8 could be read in the following manner:

> **If you do not find** from the evidence beyond a reasonable doubt **that the defendant did not act under the influence of sudden passion** arising from adequate cause [the element identified in paragraph three of the verdict director], **you must find the defendant not guilty** under Count I of murder in the second degree as submitted in Instruction No. 7.

While the double negative that resulted from trial counsel's choice of MAI-CR 3d 308.02 Notes on Use option [1] is confusing, it does not render Instruction No. 8 inconsistent with Instruction No. 7.

Finally, Instruction No. 8 is an accurate statement of the law, as the burden of proving that a defendant did *not* act under the influence of sudden passion remains on the State. *State v. Price*, 928 S.W.2d 429, 431 (Mo. App. W.D. 1996) (once a defendant injects the issue of sudden passion, it becomes an element of the crime, and the State is then required to disprove the existence of sudden passion beyond a reasonable doubt). And in a case where evidence of sudden passion is introduced, if the jury rejects the proposition that the defendant was *not* acting under the influence of sudden passion, the jury is then precluded from finding the defendant guilty of second-degree murder. The language of Instruction No. 8, though somewhat confusing, reflected that the State bears the burden of proving that [petitioner] did *not* act under the influence of sudden passion, and "unless" the jury finds that the State met its burden, the jury is mandated to enter a not-guilty verdict for second-degree murder. Therefore, the converse was an accurate statement of law and not inconsistent with the language of the verdict director.

Because we find that Instruction No. 8 was technically compliant with MAI-CR 3d 308.02, did not misstate the law, and was not

inconsistent with verdict-directing Instruction No. 7, we cannot find trial counsel ineffective for submitting it. *See State v. Colbert*, 949 S.W.2d 932, 944 (Mo. App. W.D. 1997) (no ineffective assistance of counsel where counsel submitted an MAI-compliant alibi instruction even though it could have been more specific as to time and location).

### D. Potential confusion and prejudice

But even if counsel's performance could be deemed deficient, [petitioner] is still not entitled to relief because he failed to prove that he was prejudiced by the submission of Instruction No. 8. A movant must establish both deficient performance and resulting prejudice to be entitled to relief on a claim of ineffective assistance of counsel, and the failure to satisfy either prong will result in the denial of his motion for post-conviction relief. *Clay v. State*, 310 S.W.3d 733, 735 (Mo. App. W.D. 2010).

[Petitioner] claims that "[h]ad a jury been properly instructed. . . , there is a reasonable probability they would not have found [petitioner] guilty of murder in the second degree, but instead of voluntary manslaughter." He relies on a question posed by the jury during deliberations to support his assertion that Instruction No. 8 was both confusing and misleading. But the question posed by the jury was related to Instruction No. 7 (the verdict director) and not Instruction No. 8 (the converse). The jury asked the court, "[s]hould Instruction No. 7 say did <u>not</u> do so under the influence . . . OR should it say do so under?" The court responded, "the language in Instruction #7 is correct."

While the jury's confusion may have been due to the combination of negatives used in the converse, as suggested by [petitioner], it is just as likely that the jury was confused by the notion that the State was required to prove a negative in the verdict director -- a confusion that would have existed even in the absence of Instruction No. 8. Thus, the jury's question does not establish [petitioner's] claim of prejudice. Further, to the extent that the question reflected some confusion on the jury's part, the trial court's direction that Instruction No. 7 was correct, and implicitly that it therefore should be followed, should have resolved any confusion.

The court's response to the jury that "the language in Instruction #7 is correct," was not erroneous. Instruction No. 7 was a properly worded verdict director for second-degree murder that required the jury to disbelieve that [petitioner] acted under the influence of

–12–

sudden passion arising from adequate cause in order to find him guilty. n.6 And, as discussed above, Instruction No. 8 contained this same requirement. Because "[t]he jury is presumed to have followed the trial court's instructions," *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006), the jury necessarily rejected [petitioner's] evidence that his actions were conducted under the influence of sudden passion when they found him guilty of second-degree murder.

> n.6 [Petitioner] does not claim that Instruction No. 7 was improper in any manner.

In *Strickland v. Washington*, the United States Supreme Court directed that "[i]n making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." 466 U.S. 668, 694 (1984). "The assessment of prejudice should proceed on the assumption that the decisionmaker [sic] is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. To accept [petitioner's] claim of prejudice, we would have to ignore *Strickland*'s guidance on the prejudice inquiry and assume that if the language in Instruction No. 8 had followed either option [2] or [3], rather than option [1], the jury would have altered its factual finding that [petitioner] did not act under the influence of sudden passion. This we cannot do.

Moreover, the verdict director contained a general converse directing the jury to find [petitioner] not guilty unless they found and believed "from the evidence beyond a reasonable doubt each and all of these propositions[.]" The Eastern District of this court has previously rejected claims of ineffective assistance of counsel related to the giving of converse instructions based on the presence of the general converse within the verdict director. *Barteau v. State*, 767 S.W.2d 107, 108 (Mo. App. E.D. 1989); and *Golliday v. State*, 758 S.W.2d 129, 131 (Mo. App. E.D. 1988). The *Barteau* and *Golliday* courts found no prejudice from counsels' failure to offer proper converse instructions because the general converse in the verdict director had the same practical effect as a separate, properly worded converse would have had; in other words, the general converse allowed the jury to consider whether the State had proven every element in the verdict director beyond a reasonable doubt. *Barteau*, 767 S.W.2d at 108; *Golliday*, 758 S.W.2d at 131.

–13–

> The same is true here. The general converse included within the verdict director had the same practical effect as the separate converse in Instruction No. 8 (though arguably the general converse was more understandable). Thus, [petitioner] has failed to demonstrate any prejudice from counsel's submission of Instruction No. 8.
>
> **Conclusion**
>
> Because [petitioner] has failed to prove either deficient performance or resulting prejudice, the motion court committed no error in overruling his Rule 29.15 motion.

(Respondent's Exhibit K, pp. 4-11).

The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

Ground 2 is denied.

### GROUND 3

In Ground 3, petitioner expresses his dislike of the electronic case filing system implemented at Crossroads Correctional Center ("CrCC"). The electronic filing program at CrCC was implemented at the request of the Court as a benefit to the Court, the prison, and the inmates, and has been found to be reasonable. Additionally, such a ground is not relevant to the merits of this case, and it is not cognizable in a federal habeas corpus petition.

### GROUND 4

In Ground 4, petitioner claims that the motion court erred in failing to produce findings of fact and conclusions of law on grounds he set forth in a "pro se supplemental Rule 29.15 motion" (Respondent's Ex. H, pp. 47-108), which was attached to his amended Rule 29.15 motion, and

therefore constitutes cause for procedural default of those claims. Respondent correctly contends that Ground 4 is procedurally defaulted.

> In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:
>
>> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that, although petitioner presented the claims at issue concurrently with his amended Rule 29.15 motion, petitioner did not raise them on appeal from the denial of his motion. Therefore, those claims are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any explanation for why this ground was not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default.[3] As a result, we do not consider prejudice. The Court, however, can

---

[3]The recent holding by the Supreme Court of the United States in Martinez v. Ryan, 132 S.Ct. 1309 (2012) does not apply to petitioner's case. Although petitioner attempts to allege ineffective assistance of post-conviction counsel as cause for his procedural default of Ground 4 in his reply to respondent's response (Doc. No. 14, pp. 11-12 ), he did not do so in his petition (Doc. No. 1) or

still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Ground 4. He does not show that a manifest injustice will occur if this ground is not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Ground 4 is barred.

Ground 4 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

---

memorandum in support (Doc. No. 2). On the contrary, he acknowledges that Ground 4 does not trigger Martinez v. Ryan and asks the Court to apply the Martinez holding to motion court error (Id. at 22), which the Court declines to do.

–16–

**ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

                                                /s/ Gary A. Fenner
                                                GARY A. FENNER
                                                UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   January 10, 2013.